UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| David C. Brinkley, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:10-CV-263 |
| | ) | |
| Michael J. Astrue, | ) | |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Plaintiff David C. Brinkley seeks judicial review of the final decision of Defendant Michael J. Astrue, Commissioner of Social Security, who denied his application for Supplemental Security Income Benefits under the Social Security Act. For the following reasons, the Court affirms the Commissioner's decision.

**A.     Procedural Background**

In July 2007, Plaintiff applied for Supplemental Security Income Benefits ("SSI") and Disability Insurance Benefits ("DIB"), alleging disability from degenerative disc disease beginning June 11, 2006. Plaintiff's applications were denied initially and upon reconsideration on January 12, 2007, prompting Plaintiff's request before Administrative Law Judge Terry Miller ("ALJ") (R. 14).

Plaintiff appeared with counsel and testified at a hearing on December 2, 2007 (R. 22). On February 5, 2009, the ALJ determined that Plaintiff was not disabled under the Act and thus was not entitled to SSI benefits (R. 21). The ALJ found as follows:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2009.

2. The claimant has not engaged in substantial gainful activity since 2004.

3. The claimant has the following severe impairment: chronic back pain caused by degenerative disc disease of the lumbar spine, with primary right leg radicular symptoms and weakness.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525, 404.1526, 416.925 and 416.926).

5. The claimant has the residual functional capacity to perform "light" work as defined in 20 CFR 404.1567(b) and 416.967(b) with the additional restrictions of allowing for a sit/stand at will option, only occasional climbing of ramps and stairs, and only occasional balancing, stooping, kneeling, crouching, and crawling.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on July 6, 1958, and was 47 years old, which is defined as a younger individual age 18–49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563 and 416.963).

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10. Considering the claimant's age, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from June 11, 2006, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(R. 16–21).

The ALJ's decision became final when the Appeals Council denied Plaintiff's request for review on June 10, 2010 (R. 1). Plaintiff then filed this appeal in the United States District Court for the Northern District of Indiana.

**B.     Facts**

**(1)     *Plaintiff's Background***

Plaintiff was born on July 6, 1958.  He has completed the eleventh grade and does not have his GED (R. 29). Plaintiff has worked as an automobile service station mechanic and automobile mechanic (R. 33). From October 1993 through 2004, Plaintiff was a self-employed auto mechanic and then later worked at an Automotive Service Center until he was fired. *Id.* Plaintiff has worked as an auto mechanic in some capacity for the past fifteen years. *Id.*

Plaintiff currently resides in his friend's one-story home (R. 42). Plaintiff's daily activities include caring for personal hygiene, sitting in a recliner for about twenty-two hours per day, reading the wanted advertisements, watching television, talking on the telephone,

performing some household chores, going grocery shopping once every couple of weeks, and cooking (R. 52–53). Plaintiff also testified that he occasionally performs odd jobs for a friend's company, including performing oil changes on the company truck, and doing other mechanic-type work (R. 26–27).

**(2)** *Medical Evidence*

In April 2004, Plaintiff visited Dr. Niles Schwartz, an orthopedist, at the orthopedic clinic of St. Joseph Hospital complaining of lower back pain that had been ongoing for twenty years (R. 251–52). Plaintiff also complained of right leg numbness and weakness (R. 251). Plaintiff reported that he had never had any injections, surgery, or physical therapy on his back. (*Id.*). Dr. Schwartz noted that Plaintiff was "rather dramatic" about his events and symptoms. (*Id.*). Dr. Schwartz explained that Plaintiff had full range of motion in his lumbar spine with mild tenderness in the lower back. (*Id.*). Dr. Schwartz diagnosed Plaintiff with acute, chronic low back pain with right leg radicular symptoms[1] (R. 252). He recommended that Plaintiff obtain an MRI of his back. (*Id.*).

An MRI of Plaintiff's lower back revealed some mild to moderate degenerative disc disease at L5-S1 and some mild osteoarthritis at L4-L5 and L5-S1 (R. 249). The MRI revealed no evidence of any nerve root impingement or any foraminal stenosis.[2] (*Id.*). On the basis of

---

[1] Radicular leg pain is a sharp pain that runs down from an individual's buttock down into his or her calf or foot with movement that follows from a nerve root distribution. *Surgery Not the Only Option for Treating Spinal Stenosis,* MAYO CLINIC, http://www.mayoclinic.org/medical-edge-newspaper-2009/july-03b.html (last visited Mar. 26, 2012).

[2] Foraminal stenosis is caused when the passage through which the spinal cord runs becomes clogged, which can lead to numbness, weakness, burning sensations, tingling and "pins and needles" in the arms and legs. *Foraminal Stenosis,* CEDARS-SINAI, http://www.cedars-sinai.edu/Patients/Health-Conditions/Foraminal-Stenosis.aspx (last visited Mar. 26, 2012).

4

these MRI results, Dr. Niles stated that there was no need for any surgical intervention and recommended that Plaintiff receive physical therapy for lumbar strengthening and stretching. (*Id.*).

In May 2004, Plaintiff returned to Dr. Schwartz complaining of "extreme back pain," a burning sensation in his toes, and some neck pain (R. 273). Dr. Schwartz noted that Plaintiff had full range of motion in his neck with no tenderness, no tenderness over the midline with palpation, normal strength in the upper extremities with no deficits noted, good reflexes, and intact sensation in all extremities. (*Id.*). Dr. Schwartz also stated that Plaintiff was able to toe-walk and heel-walk, although his left knee tendon gives way. (*Id.*). Dr. Schwartz opined that Plaintiff tended to exaggerate these symptoms. (*Id.*). An x-ray of Plaintiff's cervical spine revealed normal findings with no fractures, dislocations, or subluxations (R. 273, 275). Dr. Schwartz offered Plaintiff an epidural injection; however, Plaintiff refused stating that it would not help him (R. 273). Plaintiff requested narcotic pain medication, but Dr. Schwartz refused stating that it was not appropriate for chronic low back pain. (*Id.*).

On July 10, 2006, Plaintiff went to the emergency room complaining of lower back pain that had persisted for three years, was constant in nature, and waned in intensity but was much more severe in the days before his emergency room visit (R. 240). Plaintiff also reported that he occasionally had pain down both legs, more in his right than left. (*Id.*). Plaintiff's physical examination revealed that Plaintiff had some tenderness to palpitation in the lower back area but that he was not in any significant discomfort. (*Id.*). Plaintiff was prescribed Vicodin and Flexeril for his pain symptoms and was referred to an orthopedist for further evaluation (R. 241).

On July 11, 2006, Plaintiff visited Dr. Nikola Nenadovich, an orthopedist, complaining of back and leg pain (R. 225–26). Dr. Nenadovich noted that Plaintiff was seated comfortably in the

5

examination room (R. 226). He reported that Plaintiff demonstrated no step off deformities or malalignment regarding the lumbar spine. (*Id.*). Instead, Dr. Nenadovich stated that Plaintiff displayed tenderness of the back that was out of proportion to the findings on examination. (*Id.*). He diagnosed Plaintiff with degenerative disc disease and lower backpain and recommended that Plaintiff begin a course of anti-inflammatory medication, Relafen, and attend a physical therapy program (R. 227).

On July 15, 2006, Plaintiff visited the emergency room complaining of lower back pain radiating into the right leg with some tingling in the right foot (R. 235). Plaintiff reported that he had just seen an orthopedist who had prescribed him Relafen but that it was not helping his symptoms. (*Id.*). The attending physician noted that Plaintiff's back was normal with no tenderness to palpation. (*Id.*). Plaintiff was given a prescription for Vicodin-ES for pain on an as needed basis and was discharged from the hospital (R. 236).

In August 2006, Dr. J. Sands, a state agency reviewing physician, opined that Plaintiff's degenerative disc disease and lower back pain were not severe impairments (R. 245). Dr. Sands noted that Plaintiff did not have pain or tenderness to palpation and that his neurological examinations were normal. (*Id.*). Dr. M. Ruiz, another state agency reviewing physician, agreed with Dr. Sands' opinion on January 12, 2006 (R. 246).

In February 2007, Plaintiff went to the St. Joseph Hospital emergency room with complaints of back pain, right leg pain, and right foot pain (R. 298–99). The attending physician reported that Plaintiff had some mild tenderness in his lower back (R. 299). Plaintiff requested narcotic pain medication and was prescribed Vicodin and was instructed to follow up with the orthopedic or pain management clinic (R. 299–300).

In May 2007, Plaintiff again visited the emergency room complaining of back, right leg, and foot pain (R. 313–14). Plaintiff reported that his entire right foot was severely painful to touch (R. 313). Plaintiff explained that he had a chronic problem of back pain on and off for years but denied having any current numbness or weakness (R. 314). The attending physician reported that Plaintiff had some tenderness throughout his foot, but that he was still able to move decently at the knee and foot. (*Id.*). He also noted that Plaintiff was very evasive in answering his questions. (*Id.*). Plaintiff was diagnosed with right lumbar radiculopathy[3] and right foot neuropathy[4] and was prescribed Vicodin, Flexeril, and Motrin. (*Id.*).

In June 2007, Plaintiff visited the orthopedic clinic of St. Joseph Hospital complaining of lower back and leg pain (R. 268). Dr. Brown, the attending physician, noted that Plaintiff was very agitated and reported that it was difficult to get a straight answer from Plaintiff on many of his questions. (*Id.*). Upon physical examination, Dr. Brown noted that Plaintiff had some weakness in his right lower extremity, but that his left lower extremity had full strength. (*Id.*). Dr. Brown recommended that Plaintiff take anti-inflammatory medication and attend physical therapy; however, Plaintiff declined both treatment options (R. 269). Dr. Brown recommended that Plaintiff obtain an MRI of his spine. (*Id.*).

On June 22, 2007, an x-ray of Plaintiff's lower back revealed degenerative disc disease and facet disease[5] at L5-S1 (R. 270).

---

[3] Lumbar radiculopathy is chronic pain which occurs in the lower back and legs and is caused by compressed nerve roots in the spine. *Spine Interest Group,* MAYO CLINIC, http://www.mayoclinic.org/neurology/spinegroup.html (last visited Mar. 26, 2012).

[4] Neuropathy results from nerve damage and causes numbness or tingling in the hands and feet. *Peripheral Neuropathy,* MAYO CLINIC, http://www.mayoclinic.com/health/peripheral-neuropathy/DS00131 (last visited Mar. 26, 2012).

[5] Facet Disease is caused by the cartilage in the joints being worn down as a result of wear and tear, aging, injury or misuse. *Facet Disease,* LASER SPINE INSTITUTE, http://www.laserspineinstitute.com/back_problems/facet_disease/ (last visited Mar. 26, 2012).

On July 5, 2007, an MRI of Plaintiff's lower back revealed mild degenerative changes, predominantly at the L5-S1 level; a mild degree of right foraminal and extraforaminal disc protrusion,[6] but without demonstration of secondary nerve root compression or displacement; a disc protrusion at L5-S1 contributing to mild spinal stenosis;[7] and mild degenerative bilateral foraminal narrowing with no evidence of associated nerve root compression (R. 265–66).

After obtaining the MRI of his lower back, Plaintiff returned to the orthopedic clinic at the St. Joseph Hospital on June 7, 2007, reporting that he continued to have midline back pain as well as intermittent right plantar foot numbness (R. 263). Plaintiff also stated that he had isolated back pain with no associated radicular symptoms into his legs. (*Id.*). Dr. Coats noted that Plaintiff had tenderness to palpation in the lower back area, but that his motor function and sensation were intact bilaterally. (*Id.*). He reported that Plaintiff's July 2007 MRI showed mild degenerative changes throughout the lumbar spine, but that the MRI did not reveal any evidence of large herniated discs, significant central or foraminal stenosis, or nerve root compression. (*Id.*). Dr. Coats opined that the MRI did not reveal anything that would benefit from surgical intervention, but recommended that Plaintiff undergo an epidural injection and begin taking Celebrex (R. 263–64).

In September 2007, Plaintiff visited the emergency room complaining of lower back pain (R. 306). Plaintiff reported that he recently rode a riding lawnmower and that now he could barely move. (*Id.*). Plaintiff also stated that he had been out of Vicodin for a week. (*Id.*). Dr. Pottinger noted that Plaintiff was mildly tender to palpation over the lumbar spine, but did not

---

[6] Foraminal and extraforaminal disc protrusion is the protrusion of a degenerated or fragmented vertebral disk with potential compression of nerves in the spine. *Herniated Disc,* CEDARS-SINAI, http://www.cedars-sinai.edu/Patients/Programs-and-Services/Imaging-Center/For-Patients/Glossary.aspx (last visited Mar. 26, 2012).

[7] Spinal stenosis occurs when part of the spine narrows, putting pressure on the spinal cord or nerves. That pressure can cause pain, numbness or weakness in the back, neck, shoulders or limbs. *Spinal Stenosis,* MAYO CLINIC, http://www.mayoclinic.org/spinal-stenosis/ (last visited Mar. 26, 2012).

have tenderness in the cervical and thoracic spine. (*Id.*). Dr. Pottinger gave Plaintiff Vicodin for pain management. (*Id.*).

In February 2008, Plaintiff again visited the Orthopedic Clinic at the St. Joseph Hospital complaining of lower back pain (R. 275). After reviewing Plaintiff's MRI results, Dr. Jason Hanna reported that Plaintiff had diffused degenerative disc disease, for which there were no really good surgical options (R. 254). He also noted that Plaintiff had limited range of motion in his spine with flexion, extension, and lateral bending (R. 275). He reported that Plaintiff had full motor strength in his lower extremities, nearly intact sensation, and normal reflexes. (*Id.*). He prescribed Plaintiff Vicodin and Celebrex for pain management. (*Id.*).

A July 2008 MRI of Plaintiff's thoracic spine was unremarkable (R. 280). The MRI revealed that Plaintiff's thoracic vertebrae and disc spaces appeared to be normal with no evidence of central stenosis, disc herniation, or nerve root impingement (R. 280). The MRI of Plaintiff's cervical spine revealed a small right paracentral disc protrusion at C5-C6 without nerve root compression or canal compromise; a small central disc protrusion at C4-C5 without nerve root compression or canal compromise; and a mild degenerative annular bulge at C6-C7 (R. 281). The MRI of Plaintiff's lumbar spine also revealed minimal facet arthropathy[8] at L5-S1 that was unchanged from the prior MRI (R. 282).

In August 2008, Plaintiff visited Dr. Eric Schreier for an electromyogram (EMG) consultation (R. 291–93). Dr. Schreier noted that Plaintiff was not in distress, but that he displayed marked pain behavior (R. 291). He reported that Plaintiff's lower extremity muscle bulk and tone were normal and that his reflexes were normal. (*Id.*). Dr. Schreier performed an

---

[8] Facet arthropathy is caused by a breakdown of your spine's facet joints which may result in pain, swelling and tenderness. *Facet Disease Overview,*, LASER SPINE INSTITUTE, http://www.laserspineinstitute.com/back_problems/facet_disease/ (last visited Mar. 26, 2012).

EMG on Plaintiff, which was within normal limits (R. 292). Plaintiff requested narcotic medication; however, Dr. Schreier declined to prescribe Plaintiff such medication. (*Id.*).

**(3)** *Plaintiff's Testimony*

At the administrative hearing, Plaintiff testified that he was unable to work due to back and right leg pain (R. 34–35). Plaintiff stated that he experienced dull pain most of the time, but that his pain became sharp with some types of activity, such as bending (R. 35–36). Plaintiff testified that he took Vicodin for his pain, which helps, but does not completely relieve his pain (R. 37). He also stated that he has undergone some epidural injections but that they do not help his pain (R. 39). He testified that his doctors had told him that he was not a candidate for surgery (R. 40). Plaintiff explained that he has been using a golf putter as a cane on and off for the last six months, but that a doctor has not prescribed him a cane (R. 40–41). Plaintiff said that he was unable to walk very far and was unable to stand for very long due to his pain (R. 46–47). He testified he could only sit for five or ten minutes before having to get up and change positions (R. 48). He stated that he could lift ten or fifteen pounds, but that he would have difficulty picking something up off the floor because of the bending required. (*Id.*).

**(4)** *Vocational Expert's Testimony*

At the administrative hearing, the ALJ presented Vocational Expert Amy Cushbaugh with the following vocational profile: an individual of Plaintiff's age, education, and past work history, who was limited to performing a range of light work that allowed for a sit/stand option at will and required no more than occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and crawling (R. 66–67). The vocational expert testified that the

hypothetical individual could perform one of 1,300 jobs as a mat cutter, 4,000 jobs as an electronic accessories assembler, and 75,000 jobs as a cashier (R. 68–69).

**(5)** *The ALJ's Decision*

The ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act and found that Plaintiff had the following severe impairments: chronic low back pain caused by degenerative disc disease of the lumbar spine, with primary right leg radicular symptoms and weakness (R. 16). The ALJ determined, however, that Plaintiff did not have an impairment or combination of impairments that equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (R. 17).

Overall, the ALJ determined that Plaintiff had the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b), with additional restrictions of allowing for a sit/stand at will option, only occasional climbing of ramps and stairs, and only occasional balancing, stooping, kneeling, crouching, and crawling. (*Id.*). The ALJ further determined that the Plaintiff's medically determinable impairment could reasonably be expected to cause the alleged symptoms; however, the Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not credible to the extent that they were inconsistent with his RFC finding (R. 18). As these limitations still allowed performance of significant numbers of regional jobs, the ALJ determined the Plaintiff was not disabled under the Social Security Act.

After considering the entire record, the ALJ concluded that despite Plaintiff's "fairly dramatic pain presentation at the hearing," the records do not show much in the way of major degenerative problems in the lumbar spine, and the objective studies show only mild to moderate

degenerative disc disease with no evidence of nerve root impingement or major stenosis. Further, surgery was not recommended, and Plaintiff had not consistently followed doctors' recommendations for treatment such as pain management, physical therapy, and epidurals. Consequently, the ALJ concluded that the Plaintiff is capable of performing a range of light work (R. 19).

**C.     Standard of Review**

This Court has authority to review Social Security Act claim decision under 42 U.S.C. § 405(g). The Court will uphold an ALJ's decision if it is reached under the proper legal standard and is supported by substantial evidence. *Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000). The Court will not decide facts anew, reweigh the evidence, or substitute its own judgment to decide whether a claimant is or is not disabled. *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). The Commissioner's decision must be upheld if there is substantial evidence to support it, even if substantial evidence would support an opposite conclusion. *Farrell v. Sullivan*, 878 F.2d 985, 990 (7th Cir. 1989).

**D.     Disability Standard**

To qualify for Disability Insurance Benefits the claimant must establish that he or she suffers from a disability. A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Administration established a

five-step inquiry to evaluate whether a claimant qualifies for disability benefits. A successful claimant must show:

> (1) he is not presently employed; (2) his impairment is severe; (3) his impairment is listed or equal to a listing in 20 CFR § 404, Subpart P, Appendix 1; (4) he is not able to perform his past relevant work; and (5) he is unable to perform any other work within the national and local economy.

*Scheck v. Barnhart*, 357 F.3d 697, 699–700 (7th Cir. 2004). An affirmative answer leads either to the next step or, onto steps three and five, to a finding that the claimant is disabled. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001). A negative answer at any point other than step three stops the inquiry and leads to a finding that the claimant is not disabled. *Id*. The burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).

### E. Analysis

Plaintiff claims that the ALJ erred by finding that he was not disabled within the meaning of the Social Security Act and by denying Supplemental Security Income Benefits. Plaintiff's only argument in advancing his claim is that the ALJ's decision was not supported by substantial evidence because Plaintiff's spinal impairments were "much more serious" than the ALJ found in his decision.

The Social Security Act establishes that the Commissioner's findings as to any fact are conclusive if supported by substantial evidence. *Diaz v. Charter*, 55 F.3d 300, 305 (7th Cir. 1995). Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003). While the court will not hesitate to reverse a ruling that lacks evidentiary support, it will not reweigh

the evidence that the parties presented or substitute its judgment for that of the ALJ. *Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000).

In claiming that Plaintiff's spinal impairments were much more serious than the ALJ found in his decision, Plaintiff first argues that the ALJ should have identified additional problems with his spine, including dextroscoliosis,[9] facet arthropathy, Schmorl's nodes,[10] sacroiliitis,[11] end plate osteophytes,[12] and osteoarthritis,[13] as separate impairments. Plaintiff then claims that the ALJ should have considered these impairments in combination with his low back pain. However, Plaintiff fails to point to any evidence that indicates that such impairments caused more restrictive functional limitations than those assessed by the ALJ. Indeed, the ALJ noted that no treating or examining physician opined that Plaintiff was more functionally limited than as assessed by the ALJ in his RFC findings. For example, Dr. Sands and Dr. Ruiz, two state agency reviewing physicians, both reviewed Plaintiff's 2004 MRI results which showed dextroscoliosis, mild facet arthropathy, and mild osteoarthritis, and opined that such conditions did not significantly limit Plaintiff's ability to perform basic work activities (R. 245–46, 249, 253). Additionally, Dr. Brown, a treating orthopedist, reviewed the same MRI results and opined that Plaintiff was capable of performing a number of jobs in spite of his back impairments (R. 269). Consequently, the medical evidence of record demonstrates that Plaintiff's spinal

---

[9] Scoliosis is the sideways curvature of the spine. *Scoliosis,* MAYO CLINIC, http://www.mayoclinic.com/health/scoliosis/DS00194 (last visited Mar. 26, 2012).

[10] Schmorl's nodes are herniations of the intervertebral disc through the vertebral end-plate. *Schmorl's Nodes,* DYNAMIC CHIROPRACTOR, http://www.dynamicchiropractic.com/mpacms/dc/article.php?id=44556 (last visited Mar. 26, 2012).

[11] Sacroiliitis is an inflammation of one or both of your sacroiliac joints, which connect your lower spine and pelvis. *Sacroiliitis*, MAYO CLINIC, http://www.mayoclinic.com/health/sacroiliitis/DS00726 (last visited Mar. 26, 2012).

[12] Osteophytes are bony projections that develop along the edges of bones. *Bone Spurs*, MAYO CLINIC, http://www.mayoclinic.com/health/bone-spurs/DS00627 (last visited Mar. 26, 2012).

[13] Osteoarthritis is arthritis of the spine. *What is Arthritis,* LUMBAR SPINE INSTITUTE, http://www.laserspineinstitute.com/back_problems/arthritis_of_the_spine/ (Mar. 26, 2012).

impairments of mild dextroscoliosis, mild facet arthropathy, and mild osteoarthritis were not more severe than as assessed by the ALJ in his RFC finding.

Plaintiff also contends that the ALJ should have considered that a July 2008 MRI of his thoracic spine demonstrated small Schmorl's nodes at several levels (R. 280). However, again, Plaintiff does not point to any evidence that indicates that such a clinical finding would cause more severe functional limitations than those assessed by the ALJ. Although the July 2008 MRI results indicated that Plaintiff had small Schmorl's nodes at several levels, the radiologist interpreting the results concluded that the MRI of Plaintiff's thoracic spine was negative (R. 280). Further, the record reflects that none of Plaintiff's treating or examining physicians indicated that a finding of small Schmorl's nodes in Plaintiff's thoracic spine had any medical significance or would cause any functional limitations.

Plaintiff also contends that the ALJ should have considered a clinical finding of "small end-plate osteophytes" as revealed in a July 2007 MRI of Plaintiff's lumbar spine (R. 265–66). Plaintiff, however, ignores that this clinical finding was accurately characterized as "mild degenerative changes" by the interpreting radiologist. (*Id.*). The ALJ appropriately considered the "mild degenerative changes" contained within the July 2007 MRI and noted that they caused only "mild spinal stenosis" (R. 266). Plaintiff also failed to demonstrate that a clinical finding of "small end-plate osteophytes" necessitated a greater functional limitation than those assessed by the ALJ.

Lastly, Plaintiff contends that the ALJ should have considered Plaintiff's diagnosis of sacroiliitis (R. 336). However, the record shows that Plaintiff was not diagnosed with sacroiliitis until December 14, 2009, more than ten months after the ALJ's decision (R. 225–37). It is well-established law that additional evidence submitted to the Appeals Council that was not before the

ALJ cannot be used by the reviewing court as a basis for a finding of reversible error in the ALJ's opinion. *Rice v. Barnhart*, 384 F.3d 363, 366 n.2 (7th Cir. 2004). In this case, the Appeals Council determined that the additional evidence did not provide a basis for reversing the ALJ's decision and denied Plaintiff's request for review. This Court, too, is limited to considering the evidence that was before the ALJ when determining whether the ALJ's decision was supported by substantial evidence.

**F.     Conclusion**

The Court finds the ALJ relied on substantial evidence in concluding that Plaintiff is not disabled according to Social Security standards. As discussed above, Plaintiff has failed to demonstrate that his impairments caused any more restrictive functional limitations than those assessed by the ALJ. While Plaintiff alleges that various clinical findings indicated that he was more functionally limited than assessed in the ALJ's RFC finding, he has not pointed to any medical evidence of record that supports his argument. Therefore, the Court affirms the ALJ's decision.

SO ORDERED on March 27, 2012.

   S/ Joseph S. Van Bokkelen
JOSEPH S. VAN BOKKELEN
UNITED STATES DISTRICT JUDGE